```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                            EASTERN DIVISION


ERIC FULTON,                      )
                                  )
            Petitioner,            )
                                  )
        v.                        )       No. 4:06 CV 1857 DDN
                                  )
JAMES PURKETT,                    )
                                  )
            Respondent.            )
```

### MEMORANDUM

This action is before the court upon the petition of Missouri state prisoner Eric Fulton for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have consented to the exercise of plenary authority of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 11.)

### I. BACKGROUND

On October 10, 2003, a jury in the Circuit Court of the City of St. Louis, Missouri, found petitioner Eric Fulton guilty of first-degree robbery, kidnapping, and two counts of armed criminal action in connection with an armed carjacking. (Doc. 7, Ex. 1 at 561-63.) He was sentenced to twenty years imprisonment for the robbery, twenty years imprisonment for the kidnapping, fifteen years imprisonment for the first count of armed criminal action, and twenty years imprisonment for the second count of armed criminal action, all sentences to be served concurrently. (Id. at 572.)

On direct appeal, the Missouri Court of Appeals affirmed the conviction. (Id., Ex. 5); State v. Fulton, 146 S.W.3d 438 (Mo. Ct. App. 2004)(summary disposition). Petitioner then moved for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. The circuit court denied the motion without an evidentiary hearing. (Doc. 7, Ex. 6 at 32-39.) The Missouri Court of Appeals affirmed the circuit court's decision. (Id., Ex. 10); Fulton v. State, 192 S.W.3d 499 (Mo. Ct. App. 2006)(summary disposition).

In its informational opinion on direct appeal from the convictions, the Missouri Court of Appeals described the facts indicated by the evidence viewed in the light most favorable to the verdict:

> [I]n February of 2002, [petitioner] and Eddie Coleman were attending a hotel party in downtown St. Louis. After the party, [petitioner] and Coleman spent the night at the hotel. The next day, [petitioner] and Coleman remained at the hotel where they drank beer and smoked marijuana. At around 9:00 or 10:00 p.m., when the marijuana supply ran out, [petitioner] and Coleman left the hotel in order to purchase more marijuana.
>
> At approximately 11:00 p.m. that same night, [female victim] and her co-worker Peter Jones left work. Victim had agreed to give Jones a ride home in the black Yukon Denali she had borrowed from her boyfriend. While Victim was driving, Jones gave her directions to his house. Meanwhile, Jones had a cell phone conversation with an unidentified person and said "Yeah, yeah. It's set. We're all ready."
>
> After dropping off Jones, Victim noticed that she was being followed by another automobile. When she parked the Yukon and exited the truck, the car that she thought had been following her also parked. At that time, a gunman, who was later identified as [petitioner] approached and forced Victim back into the driver's seat of her parked car. [Petitioner] entered the Yukon and sat in the backseat behind Victim while his accomplice, who was later identified as Coleman, sat in the front passenger seat. At the direction of [petitioner], victim drove for approximately three blocks before she was ordered to stop and exit the automobile. [Petitioner] led Victim away from the Yukon at gunpoint and ordered Coleman to get into the driver's seat.
>
> At gunpoint, [petitioner] ordered Victim to take her clothes off after which he patted her down. He asked Victim if she had a condom so that he could have sex with her. However, [petitioner] then ordered Victim to pull her clothes back up and told her to walk away. [Petitioner] then ordered Coleman to meet him "back on Kensington" and Coleman drove off in the Yukon, alone. Shortly thereafter, a patrol car driven by Officer David Sams began pursuing the stolen Yukon and, as the speed escalated, Coleman crashed the Yukon.
>
> Victim met the police at the sight of the crash where she was able to identify Coleman as the accomplice who first sat in the passenger seat and later drove the Yukon away from the scene. Victim later met with detectives in order to try and identify the gunman. When showed a photo lineup of six men, Victim identified [petitioner] and one other man as the potential gunman. However, at a physical lineup, Victim

>    unequivocally identified [petitioner] as the gunman twice.
>
>    . . . On the day before trial, Coleman pleaded guilty to charges in connection with the incident and agreed to testify against [petitioner]. At trial, the State called Coleman, Coleman's sister, Victim, Victim's boyfriend, Officer Sams and Detective Linn Laird to testify. In his defense, [petitioner] testified that he was not involved in any of the charged crimes and offered the testimony of two additional alibi witnesses.

(Doc. 7, Ex. 5 at 2-3.)

In this habeas corpus action, petitioner alleges four grounds for relief, all rooted in claims of constitutionally ineffective assistance of counsel, because:

(1) Trial counsel did not move to suppress the victim's in-court identification of petitioner on the ground that during the pretrial lineup petitioner was required to speak the words the victim reported the perpetrator had used.

(2) Trial counsel did not object to the victim's in-court identification of petitioner on the grounds that the victim had also identified another suspect and that the victim merely repeated information the police had given her.

(3) Trial counsel did not present expert testimony relating to the effects of marijuana and "ecstasy" on state's witness Eddie Coleman.

(4) Trial counsel did not take fingerprints from the carjacked vehicle to support petitioner's alibi defense.

(Doc. 1, Ex. 1 at 1-9.)

Respondent argues that all grounds fail on the merits, and that grounds three and four are procedurally barred. (Doc. 6 at 3-4.)

## II. DISCUSSION

### Procedural Bar and Exhaustion of State Remedies

A habeas petitioner must "present the state courts with the same claim he urges upon the federal courts." Picard v. Connor, 404 U.S. 270, 276 (1971). Failure to raise a claim in the state courts erects a procedural bar to relief in federal court. Sweet v. Delo, 125 F.3d 1144, 1149-50 (8th Cir. 1997). The doctrine of procedural bar applies

whether the default occurred at trial, on appeal, or during state collateral attack. See Murray v. Carrier, 477 U.S. 478, 490-92 (1986).

Petitioner failed to present grounds three and four on his direct appeal and his appeal from the judgment denying post-conviction relief. On direct appeal, petitioner argued claims of improper testimony and insufficient evidence to support the verdict. (Doc. 7, Ex. 5 at 1.) Likewise, petitioner based his appeal from the judgment denying post-conviction relief upon claims of ineffective assistance of counsel relating only to the victim's identification of petitioner. (Id., Ex. 10 at 3-5.) Since grounds three and four of this petition were not properly exhausted before the state courts, these claims are procedurally barred.

Petitioner may avoid the procedural bar to federal habeas review if he can demonstrate legally sufficient cause for the default and actual prejudice resulting from it. Coleman v. Thompson, 501 U.S. 722, 750 (1991). To establish cause for a procedural default, petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with state procedural requirements. Id. at 753. Petitioner has not argued that a factor external to his defense has impeded his ability to comply with the state procedural requirements. Instead, petitioner claims that counsel abandoned him by not presenting these arguments to the state court. (Doc. 14, Ex. A and B.)

Petitioner's counsel was of the opinion that grounds three and four lacked merit and were not grounded in law or fact, rendering them unprovable before the state court. (Id., Ex. D at 2.) Counsel knew of these possible claims, yet decided to forgo arguing them because they did not aid petitioner's defense. Since grounds three and four were not put before the state court for a reason central to petitioner's defense, he has not demonstrated legally sufficient cause for his failure to present these grounds in state court.

Petitioner may also avoid the procedural bar by demonstrating that the failure to consider the grounds of his petition will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. A fundamental miscarriage of justice can be demonstrated only if it is

-4-

shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496. A habeas petitioner asserting actual innocence must do so with new, reliable evidence that was not presented at trial. Johnson v. Norris, 170 F.3d 816, 817-18 (8th Cir. 1999). Petitioner has not presented any new, reliable evidence which asserts his actual innocence. Therefore, grounds three and four are procedurally barred.

Though petitioner has failed to exhaust the remedies available to him in state court, a federal court may still deny habeas relief on the merits of the petition. See 28 U.S.C. § 2254(b)(2).

### Standard of Review

Relief from a state court conviction may not be granted on federal habeas corpus grounds unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d)(1)-(2). The summary nature of state court decisions does not modify the standard of review used by this court. Closs v. Weber, 238 F.3d 1018, 1020 (8th Cir. 2001).

A state court decision is contrary to established federal law if it contradicts the governing Supreme Court cases on a question of law or if, when confronting facts "materially indistinguishable" from the facts addressed in a Supreme Court decision, it reaches a different result. Williams v. Taylor, 529 U.S. 362, 406 (2000).

### Ineffective Assistance of Counsel

All of petitioner's grounds for relief allege constitutionally ineffective assistance of counsel. The Supreme Court has defined ineffective assistance of counsel under the Sixth and Fourteenth Amendments. Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Court held that the benchmark for judging claims of

ineffective assistance is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686.

To guide courts in determining what constitutes ineffective assistance, the Court in Strickland created a two-prong test. First, petitioner must show that counsel's representation was deficient in that it "fell below an objective standard of reasonableness." Id. at 688. A habeas court must "recognize that counsel is strongly presumed to have rendered adequate assistance . . . ." Id. at 690 (emphasis added); see also Blackmon v. White, 825 F.2d 1263, 1265 (8th Cir. 1987). Simply because the strategy chosen by counsel later proves to have been unsound does not require a finding of ineffectiveness. Blackmon, 825 F.2d at 1265. Strategic choices of counsel made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. Strickland, 466 U.S. at 690.

If the first prong of Strickland is met, petitioner must then show that counsel's deficient performance was so prejudicial that it deprived petitioner of a fair trial and rendered the trial result unreliable. Strickland, 466 U.S. at 687. The prejudice to petitioner must not be simply a "possibility," but must have resulted in an "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982).

### Grounds One and Two

Grounds One and Two allege that petitioner's trial counsel did not move to suppress the victim's in-court identification testimony on the ground that during the pretrial lineup petitioner was required to speak the words the victim reported the perpetrator had used, and did not object to its admission at trial when the victim had also identified another suspect and the victim merely repeated information the police had given her.

The failure to file a suppression motion does not constitute per se ineffective assistance of counsel. Kimmelman v. Morrison, 477 U.S. 365, 384 (1986). Failure to file a motion to suppress may rise to the

level of ineffectiveness if it is not a strategic decision, but merely the product of a lack of investigation and reasonable decision making on the part of counsel. Id. The habeas court's role is not to invent strategic reasons or accept any strategy that counsel could have followed, but remedy situations in which counsel's actions resulted from inattention or neglect, and not reasoned judgment. Marcrum v. Luebbers, 509 F.3d 489, 502 (8th Cir. 2007).

Grounds One and Two of the petition allege that trial counsel failed to adequately challenge the victim's identification of petitioner as unreliable and invalid. However, there was no reason for counsel to believe that the identification of petitioner was unreliable or constitutionally impermissible. The victim stated that she saw petitioner's face "[l]ike a lot," and that at one point she was face to face with petitioner for two minutes. (Doc. 7, Ex. 1 at 314-18.) Petitioner was identified on two separate occasions by the victim, once by photo line-up and again in a live physical line-up. (Id. at 310-13.) Given these facts, counsel had no reason to question the reliability or validity of the identification.

Instead of pursuing a non-meritorious motion or objection, counsel opted to present arguments regarding the weight the jury should place on the victim's identification of petitioner. During trial, counsel asserted an alibi defense and proffered three witnesses, including petitioner himself, who all testified that he could not have committed the crime because he was never at the crime scene the night of the carjacking. (Id. at 398-493.) Counsel furthered this defense by eliciting, during cross examination of the victim, testimony which called into question her recollection of the events of the night in question, as well as her ability to later reliably identify petitioner based on that recollection. (Id. at 321-37.)

Petitioner's claim of ineffective assistance due to counsel's decision to pursue this strategy, instead of questioning the reliability or validity of the identification, does not overcome the strong presumption of objective reasonableness of counsel's choices during trial. Even if hindsight renders counsel's strategy unsound, its use at trial does not rise to the level of objective unreasonableness so

long as counsel thoroughly examined the facts and applicable law. Given that counsel called three alibi witnesses and vigorously attacked the victim's ability to remember, it is clear that this strategy, though unsuccessful, was the product of counsel's thorough and reasoned deliberation over the law and facts. Grounds One and Two fail the first prong of Strickland because counsel's performance was objectively reasonable.

### Ground Three

In Ground Three, petitioner argues that counsel rendered constitutionally ineffective assistance because he did not call an expert witness to testify about the effects of marijuana and "ecstasy" on state's witness Eddie Coleman. During trial, petitioner's counsel questioned Coleman's credibility and ability to remember the events of the night in question. First, counsel elicited that Coleman was hoping to reach a plea agreement in exchange for testifying against petitioner. (Doc. 7, Ex. 1 at 217-19, 222.) Also, during the cross-examination of Coleman, counsel got him to admit that he was inconsistent in his recollection of events that day, and that he had previously identified another individual whom he claimed aided him with the carjacking. (Id. at 219-20.) Counsel then cross-examined a police officer who interrogated Coleman, and the officer stated that Coleman admitted to him that he was drinking, smoking marijuana, and under the influence of ecstasy on the day in question. (Id. at 390.) Counsel's trial strategy was to impeach Coleman's credibility and ability to remember the events on several fronts. While testimony from an expert witness regarding the effects of certain drugs may have redundantly aided the impeachment, the strategy actually pursued by counsel was nevertheless objectively reasonable. Ground Three of petitioner's claim does not meet the first prong of the Strickland test.

### Ground Four

Ground Four alleges that counsel was constitutionally ineffective because he failed to take fingerprints from the carjacked vehicle. (Doc. 1, Ex. 1 at 7.) The vehicle crashed and rolled several times

after Coleman drove it during a high-speed chase shortly after the carjacking. The automobile was left in a highly damaged state. (Doc. 7, Ex. 1 at 236.) The crash occurred on February 17, 2002, and counsel did not enter an appearance on behalf of petitioner until February 3, 2003. (Id., Ex. 2 at 2.) Given the state of the vehicle, the fact that it was in police custody immediately after the crash, and the long period of time between the crash and counsel's entry of appearance into the case to represent petitioner, it would only be speculation to argue to the jury that petitioner's prints were not on the vehicle, even if such was the case, because he was not at the scene of the crime. Therefore, it would have been objectively reasonable for counsel to not pursue such evidence. Ground Four does not meet the first prong of the Strickland analysis.

Assuming that petitioner was able to satisfy the first prong of the test articulated in Strickland on all four grounds, all claims would still fail the prejudice prong of the test. Counsel's choice to not pursue these strategies did not deprive petitioner of a fair trial, nor did it render the trial result unreliable. There is no reason to believe the result would have been any different had counsel pursued a trial strategy in line with petitioner's claims.

### III. CONCLUSION

All grounds for relief presented by petitioner are without merit because they did not satisfy either prong of the Strickland test for ineffective assistance of counsel. For these reasons, the petition of Eric Fulton for a writ of habeas corpus is denied. An appropriate Judgment Order is issued herewith.

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on December 11, 2008